IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| VANTAGE POINT TECHNOLOGY, INC., *Plaintiff*, v. AMAZON.COM, INC., *Defendant*. | CASE NO. 2:13-cv-909-JRG **LEAD CASE** |
| VANTAGE POINT TECHNOLOGY, INC., *Plaintiff*, v. SAMSUNG ELECTRONICS CO., LTD, SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC., et al. *Defendants*. | CASE NO. 2:13-cv-928-JRG MEMBER CASE |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Samsung Electronics Co., Ltd, Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC's (collectively, "Samsung") Motion to Transfer Venue (Dkt. No. 26 in 2:13-cv-928, "Def.'s Transfer Mot."). The Plaintiff Vantage Point Technology, Inc. ("Vantage Point" or "Plaintiff") opposes the Motion. For the reasons set forth below, the Court **DENIES** Samsung's Motion to Transfer Venue under § 1404(a) but *sua sponte* **ORDERS,** pursuant to Federal Rule of Civil Procedure 21, that portions of Samsung's case be severed and that those severed portions be transferred to the Northern

1

District of California in congruence with the Court's previous Order in this consolidated action (Dkt. No. 200 in case 2:13-cv-909).

## BACKGROUND

The Court notes from the outset that the procedural posture of this case is unique due to a series of unopposed transfer motions that spread claims against two different types of defendants across different judicial districts. The Plaintiff Vantage Point filed a number of lawsuits in the Eastern District of Texas against two types of defendants: (1) companies that design and manufacture chipsets ("chipset makers"), and; (2) companies that utilize chipsets in their products ("chipset consumers"). Vantage Point has alleged infringement of U.S. Patent No. 5,463,750 ("the '750 patent") and U.S. Patent No. 6,374,329 ("the '329 patent"). Vantage Point has alleged that Samsung is both a chipset maker and a chipset consumer and that Samsung infringes at least one claim of both patents. Pl.'s Resp. to Def.'s Mot. to Transfer at 9, Dkt. No. 27 ("Pl.'s Resp.").

It is clear that Samsung is both an alleged chipset maker and an alleged chipset consumer. Pl.'s Resp. at 9. As a chipset maker, Samsung incorporates or otherwise produces ARM core processor designs, which are "developed by ARM and licensed to Samsung." Def.'s Transfer Mot. at 3. These ARM designs allegedly infringe both the '750 patent and the '329 patent owned by Vantage Point. Pl.'s Resp. at 10.

In its other role as a chipset consumer, Samsung is alleged to infringe one of Vantage Point's patents through its use of Qualcomm's chipsets. Pl.'s Infringement Contentions at 3, Dkt. No. 26-6. These accused instrumentalities include, among others, any and all products/chipsets that use a dual-core Qualcomm Krait or dual-core Qualcomm Scorpion core processor design. *Id.* As noted by Samsung, the Qualcomm Krait and Scorpion are processor

cores included in chipsets Qualcomm sells to Samsung. Def.'s Transfer Mot. at 3. It is important to note that, as a chipset consumer, Samsung allegedly infringes the '750 patent but not the '329 patent.

As a chipset consumer, Samsung argues that the case against it partially hinges on Vantage Point's case against Qualcomm. Def.'s Transfer Mot. at 6. Qualcomm was originally a litigant in this Court but was transferred by means of an unopposed motion to the Northern District of California, where such is now pending. *See* Dkt. No. 18 in 2:13-cv-926. In addition, this Court dealt with a series of motions from various other chipset consumers requesting a stay of their respective cases until the claims against Qualcomm are resolved in the Northern District of California. *See* Dkt. No. 200 in 2:13-cv-909. The Court denied the other chipset consumers' motions to stay, finding the consumer-suit exception inapplicable, but determined, after considering the facts of the case, that judicial efficiency could be increased if the cases against the chipset makers and chipset consumers were pending simultaneously in the same court rather than in different courts. *Id.* Based on this reasoning, this Court severed certain other chipset consumers' claims involving Qualcomm chipsets from this case and transferred those severed claims to the Northern District of California to be litigated in conjunction with the Qualcomm case. *Id.*

Although the Court (for the reasons discussed below) denies Samsung's Motion to Transfer Venue under § 1404(a), the Court has determined that the same efficiencies that were furthered by the Court's prior Order (Dkt. No. 200 in 2:13-cv-909) would also be furthered in this case. Accordingly, the Court denies the transfer motion as a whole based on its § 1404(a) analysis; however, the Court *sua sponte* severs portions of Samsung's case (specified in more detail below) and transfers those severed portions to the Northern District of California.

**APPLICABLE LAW**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice

of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

## DISCUSSION

### I. The § 1404(a) Analysis

Three Samsung entities are parties to this lawsuit. Samsung Telecommunications America is a Delaware corporation with its principle place of business in Richardson, Texas, located in the Eastern District of Texas. Cohen Decl. at ¶ 1, Dkt. No. 26-2; Ex. B, Dkt. No. 27-3. Samsung Electronics is a South Korean corporation with its principle place of business in Korea. Kwon Decl. at ¶ 3, Dkt. No. 26-4. Samsung Electronics America is a New York corporation with a principle place of business in New Jersey. Kim Decl. at ¶ 3, Dkt. No. 26-3. Collectively, these entities are referred to as "Samsung."

Vantage Point is a Texas corporation with its principle place of business in Tyler, Texas. Pl.'s Comp. at ¶ 1. Samsung contends (and Vantage Point does not deny) that Vantage Point only recently incorporated in the Eastern District of Texas. Def.'s Ex. 2, Dkt. No. 26-13.

As a threshold matter, the parties do not dispute that this case could have been brought in the Northern District of California. Def.'s Transfer Mot. at 9. Therefore the Court proceeds to analyze the transfer factors.

## a. Public Interest Factors

### i. Court Congestion, Familiarity with the Law, and Avoidance of Unnecessary Problems Factors

As Samsung and Vantage Point both contend, these three factors are neutral.

### ii. Localized Interest Factor

The local interest factor takes into account whether localized interests are being decided at home. *Volkswagen I*, 371 F.3d 201, 206 (5th Cir. 2004). The reasoning behind this factor is that the burden of "jury service should not be imposed upon the people of a community which as no relation to the litigation." *Id.*

The parties dispute whether this factor weighs for or against transfer. Samsung argues that "this case has a far greater factual connection to the Northern District of California," mainly relying on Qualcomm's presence in the Northern District of California as support. Def.'s Transfer Mot. at 15. Vantage Point, on the other hand, notes that only a portion of this case concerns Qualcomm and that Samsung's infringement is what is at issue. Pl.'s Resp. at 9–10. Vantage Point specifically points out that Samsung maintains a facility in the Eastern District of Texas, employs people that live in the Eastern District of Texas, and markets the accused products, nationwide, out of its facility in the Eastern District of Texas. Pl.'s Resp. at 11; Cohen Decl. at ¶ 4. Furthermore, as noted in more detail below, Samsung also develops certain smartphones and tablets in the Eastern District of Texas. The Eastern District of Texas has a strong interest in determining the liability of one of its residents, so imposing the burden of jury service on the citizens of this District is justified. *Volkswagen I*, 371 F.3d 201, 206 (5th Cir. 2004). This factor weighs against transfer.

### b. Private Interest Factors

#### i. Convenience and Cost of Attendance for Key Witnesses

The Court begins its analysis of this factor by analyzing third-party witnesses. Samsung alleges that ARM and their employees—as third-party witnesses—will likely provide the primary source of evidence regarding the operation, design, and function of the accused products and chipsets that Samsung produces. Def.'s Transfer Mot. at 11. Samsung also argues that Qualcomm—as third-party witnesses—will provide evidence regarding Samsung's alleged role as a chipset consumer. *Id.* Both ARM and Qualcomm maintain facilities in California. *Id.* Samsung further alleges that the inventors of the '750 patent and two of the prosecuting attorneys reside in the Northern District of California. *Id.* Samsung alleges these attorneys and inventors will also be key third-party witnesses. *Id.*

Vantage Point argues that Samsung generically referred to ARM's headquarters and failed to mention any specific witnesses of ARM or Qualcomm that are actually located in the Northern District of California. Pl.'s Resp. at 6. In fact, Vantage Point alleges that ARM's key technical witness is located in Austin, Texas, at ARM's "sizable facility" in the Western District of Texas. Paxon Decl. at ¶ 6, Dkt. No. 27-1. Vantage Point also alleges that Samsung cherry-picked its list of key inventors by failing to mention three out of the four inventors. Two of the inventors of the '329 patent (a patent not addressed by Samsung) reside in Alabama and the third inventor of the '329 patent resides in Austin, Texas. Pl.'s Resp. at 6; Paxon Decl. at ¶7; Ex. E, Dkt. No. 27-6. Finally, Vantage Point alleges that the prosecuting attorneys for the '750 patent reside in both California and Boston, Massachusetts. Pl.'s Resp. at 6.

The Court looks first at the alleged "key" ARM witnesses. The Court does not base its conclusions on unidentified witnesses, but is persuaded by the fact that ARM's 30(b)(6)

7

scheduled technical witnesses is, in fact, located in Austin, Texas—not in California. Paxon Decl. at ¶¶ 5–6. While not in the Eastern District of Texas, Austin is significantly closer to this District than to the Northern District of California. The fact that ARM's technical 30(b)(6) witness resides in Austin greatly diminishes the weight given to Samsung's argument on this point. It strains credibility for Samsung to argue that all relevant ARM witnesses are located in California when the 30(b)(6) deposition is scheduled to take place at ARM's facility in Austin, Texas and involves an employee with key technical knowledge who works there.

The Court next turns to the inventors. A total of four inventors are named in the two patents. Of those four inventors, two reside in Alabama, which is closer to the Eastern District of Texas, one resides in Austin, Texas, which is closer to the Eastern District of Texas, and one resides in Southern California, which is closer to the Northern District of California. Paxon Decl. at ¶ 7. Samsung's argument—and noticeable avoidance in mentioning three of the four inventors—is not persuasive. The location of these inventors favors the Eastern District of Texas.

Finally, the Court turns to the prosecuting attorneys for the two patents. The Court is skeptical that these witnesses are "key" to either party's case. However, even if these witnesses are "key," they are scattered throughout the country, from California to Boston.

Accordingly, the Court is persuaded that Samsung has not shown that it would be more convenient and less costly for third-party witnesses should the case be transferred.

The Court next looks at party witnesses, whose presence is given somewhat less weight in the transfer analysis. *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). Samsung admits that "to the extent Samsung engineers possess relevant knowledge on the accused chipsets, they likely reside in South Korea." Def.'s Transfer Mot. at 12. Samsung then alleges

that direct flights are available from Seoul, South Korea to San Francisco but are not available from Seoul to Marshall, Texas. *Id.* Finally, Samsung admits that its employees who do reside in the Eastern District of Texas conduct certain development activities relating to Samsung smartphones and certain Samsung tablets. Cohen Decl. at ¶¶ 1, 4.

The Court gives less weight to each party's own witnesses. However, to the extent the Court weighs this factor, the Court finds that Samsung has employees with relevant knowledge about development activities, marketing activities, and potential damages in the Eastern District of Texas. Cohen Decl. at ¶¶ 1, 4. The Court finds that it would not be more convenient for Samsung's employees who reside in the Eastern District of Texas to travel to the Northern District of California. In addition, while Samsung's South Korea employees may be slightly more inconvenienced by travelling to Marshall through Dallas/Fort Worth (which has direct flights to and from Seoul), the Court believes that the difference is very small. *See* Paxon Decl. ¶ 9; Ex. G, Dkt. No. 27-8 (tracking travel times). Samsung alleges that the flight to San Francisco would be more convenient, but fails to mention that the other related cases transferred to the Northern District of California were transferred to the San Jose Division—not the San Francisco Division. There are no direct flights from Seoul to San Jose just as there are no direct flights from Seoul to Marshall. The South Korea employees will either have to fly to San Francisco and then drive to San Jose or fly to Dallas/Fort Worth and then drive to Marshall. Therefore the only redeeming fact of Samsung's argument is that it takes two hours longer to fly from Seoul to Dallas than from Seoul to San Francisco. Ex. G. Based on the Court's findings regarding non-party and party witnesses, the Court finds that Samsung has shown that this factor slightly favors transfer.

The majority of identified third-party witnesses are located closer to this District, including Samsung employees that live in this District. Consequently, this factor favors denying the motion.

ii. **The Availability of Compulsory Process**

The Court next turns to the availability of compulsory process to secure the attendance of key non-party witnesses at trial. Samsung argues that "several potential" ARM witnesses related to the '750 patent reside in the Northern District of California, and that these ARM witnesses can be compelled to appear for deposition and trial in the Northern District of California. Def.'s Transfer Mot. at 14. Vantage Point argues that the "key" ARM witness Vantage Point will (and is already scheduled to) dispose resides in Austin, Texas, and that this District has the power to compel his or her attendance at both deposition and trial. Pl.'s Resp. at 5; Paxon Decl. at ¶¶ 5–6. Vantage Point also argues that the same applies to the named inventor residing in Austin, Texas. *Id.*

The Court is persuaded that this factor mitigates against the motion to transfer. The only identified ARM witness resides in Austin, Texas, the four identified inventors reside in (1) Austin, Texas; (2) Alabama; (3) Alabama; and (4) Northern District of California, and the prosecuting attorneys reside in Boston, Massachusetts and Northern District of California. Pl.'s Resp. at 5; Paxon Decl. at ¶¶ 5–6. The Court will have compulsory process—both for trial and depositions—over the witnesses residing in Texas; namely, the ARM witness and one of the inventors. Fed. R. Civ. P. 45(c)(1)(B)(ii) ("A subpoena may command a person to attend a trial within the state where the person resides if the person is commanded to attend a trial and would not incur substantial expense."). The Northern District of California, on the other hand, would have compulsory process over one inventor and a prosecuting attorney. *Id.* On balance, having

10

compulsory process over a disposed 30(b)(6) witness is superior to having compulsory process over a prosecuting attorney. This factor slightly favors the Eastern District of Texas.

### iii. Access to Sources of Proof

Under this factor, the Court considers the distance that documents or other evidence must travel from their existing location to the trial venue. Samsung alleges that the accused chipsets are developed by third parties that maintain their U.S. headquarters in California, and that "most supplemental technical documents from Samsung relating to the operation and manufacture of the accused products will be located in Korea." Def.'s Transfer Mot. at 14. Samsung admits, however, that Samsung entities "conduct[] certain development activities relating to Samsung smartphones and certain Samsung tablets" in the Eastern District of Texas. Cohen Decl. at ¶ 4. Furthermore, Samsung admits that it maintains technical documents in the Eastern District of Texas as well, although Samsung claims these documents are not "unique." Def.'s Transfer Mot. at 14; Cohen Decl. at ¶ 4. Finally, Samsung admits that it maintains certain "commercialization, marketing, sales, and financial information that may be relevant to this action" in the Eastern District of Texas. Def.'s Transfer Mot. at 12; Cohen Decl. at ¶ 6.

Under this factor, the Court is persuaded that it would be more convenient to litigate this dispute in the Eastern District of Texas. Although some documents may be located in California (although, to some degree, the Court is skeptical of this based on the current location of ARM's 30(b)(6) witness), these potential yet unspecified documents do not outweigh Samsung's own admissions that relevant documents are likely located in this District. Furthermore, the potential evidence located in South Korea must be shipped a great distance, so it makes little difference whether they are shipped (likely by electronic transfer) to a facility in this District or a facility in the Northern District of California. The Court finds that this factor weighs against transfer.

#### iv.     Judicial Economy and Other Practical Problems

The parties dispute whether this factor favors transfer.  Vantage Point argues that judicial economy can be preserved by keeping the two defendants who have allegedly infringed the '329 patent together in the same court.  The case pending in the Northern District of California does not allege infringement of the '329 patent.  Pl.'s Resp. at 8.  As a result, Vantage Point argues that transferring Samsung would complicate the Northern California litigation while not simplifying the Eastern District of Texas litigation.  *Id.* at 8–10.  In addition, Vantage Point notes that this case has been pending for over a year now, and that the parties have already exchanged infringement contentions, invalidity contentions, and discovery.  *Id.* at 9.  Included in that discovery is the deposition of ARM witnesses and inventors, which will occur in the pending case in the Eastern District of Texas regardless of whether Samsung is transferred.

Samsung's argument on this factor focuses on the Qualcomm chipsets.  Samsung argues that judicial economy is furthered by having the case transferred to the Northern District of California because both this Court and the Northern District of California would otherwise be presented with the same factual dispute.  Def.'s Transfer Mot. at 10.

After considering the parties' evidence, the Court finds that this factor is neutral.  On the one hand, if the entirety of Samsung's case is transferred to the Northern District of California, then a new and unique patent would be injected into that litigation for the first time.  Vantage Point contends that the '329 patent is only infringed by the ARM-related chipsets—not the Qualcomm chipsets.  *See* Ex. 1F, Dkt. No. 26-10 (alleging that the '329 patent is infringed by the big.LITTLE ARM/ Exynos 5 Octa).  Transferring the '329 claims would needlessly complicate the Northern California litigation by adding an entirely separate patent and third-party (ARM) to the litigation.  On the other hand, if the entirety of Samsung's case is kept in this Court, then two

courts will be presented with substantially the same issues regarding Qualcomm chipsets. As a result, transferring Samsung's case would neither increase nor decrease judicial economy. Therefore this factor is neutral.

All the factors, both public and private, weigh against transfer or are otherwise neutral. As a result, Samsung's Motion to Transfer Venue (Dkt. No. 26) is **DENIED**.

**II.     Severance of Samsung's Case**

Pursuant to Federal Rule of Civil Procedure 21, the Court, "on its own . . . may at any time . . . sever any claim against a party." Fed. R. Civ. P. 21. Although the Court's § 1404(a) analysis did not justify a transfer of Samsung's case, the Court has determined it is prudent for it to exercise its discretion and sever some of the claims from Samsung's case and transfer them to the Northern District of California.

Based on the Court's determination and after considering the facts, the Court **ORDERS** that Vantage Point's claims against Samsung be severed into two distinct cases, one which alleges infringement of end products utilizing chipsets produced by Qualcomm and another which alleges infringement of end products utilizing chipsets based on the ARM design (whether or not those chipsets are manufactured by Samsung). The Court further **ORDERS** that Samsung's case involving the Qualcomm chipsets be transferred to the Northern District of California. The Clerk of this Court is directed to accomplish the severance and transfer as ordered above. The severed disputes involving Samsung's end products and chipsets utilizing the disputed ARM architecture shall be retained as a stand-alone case before this Court.

**CONCLUSION**

The Court is mindful that this case presents a complicated factual situation involving multiple defendants across multiple jurisdictions. Nevertheless, the Court is tasked with sorting

through the facts to come to a conclusion that does not prejudice either party or strain the judiciary's resources. The Court believes the above result fairly balances its responsibilities in a manner that promotes heightened judicial efficiency; accordingly, it is SO ORDERED.

**So ORDERED and SIGNED this 26th day of January, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE